UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| vs. | ) CR 05-B-0580-S |
| | ) |
| **LUSHON ANTOINE WILLIAMS, a/k/a** | ) |
| **Dontae Hatchell,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

This case is presently before the court on defendant's Amended Motion to Suppress. (Doc. 8.) Defendant asks the court "to suppress the evidence seized from the Defendant's tractor trailer." (*Id*.) An evidentiary hearing was held on March 7, 2006. Based on the evidence presented, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Amended Motion to Suppress, (doc. 8), is due to be denied.

### I. FINDINGS OF FACT

On January 20, 2004, Officer Christian Clemons of the Bessemer Police Department made a traffic stop of a tractor trailer truck being driven by defendant. Officer Clemons stopped defendant because the light over his license plate was not working. The government introduced the video tape of the stop as government's exhibit 2. As Officer Clemons was examining the back and side of the trailer, defendant got out of the truck. Officer Clemons testified that it was unusual for a driver to leave his vehicle immediately during a traffic stop. Officer Clemons has made stops on many trucks; out of approximately 100 stops he

estimated that only five or six drivers got out of the truck before the officer walked up to the driver's side of the car.

Office Clemons asked for license, log book, and motor carrier information. Defendant told Officer Clemons that he had to return to his truck for this information. Officer Clemons testified that this was also unusual because normally a truck driver would have his license, log book, and motor carrier information ready for the officer. Defendant returned and handed Officer Clemons a driver's license in the name of "Dontae Hatchell" and a "bunch of loose papers." Officer Clemons testified that most truck drivers have their paperwork in a binder, and he thought it was unusual for a truck driver to have his paperwork in such disarray.

The paperwork stated that the truck was leased to Louisiana Transportation; however, defendant told Officer Clemons that he worked for Veltex. Defendant told Officer Clemons that the Veltex registration information had expired. The name "Louisiana Transportation" was not on the outside of the truck. These facts all aroused suspicion in Officer Clemons. Defendant also told Officer Clemons that he was the only truck driver working for Veltex.

Officer Clemons testified that defendant told him that he had picked up a load of plastic sheeting in Lolita, Texas, which Officer Clemons testified was near Houston, Texas, and that he was delivering his load to Cartersville, Georgia. Officer Clemons looked at the log book and noticed that defendant had noted more than 47 hours of down time in Texas. Officer Clemons testified that this fact was of "paramount" importance to him. First, it was

important because the driver had spent close to two days of down time near a source city (Houston, Texas) for illegal drugs. Second, it was suspicious because Officer Clemons felt it would be "very unusual" for a driver to have so much down time because generally truckers want to get back on the road so that they can make money.

Also, defendant told him that he had stopped in Meridian, Mississippi, and this stop was not noted in the log book. According to Officer Clemons this was unusual because truck drivers will usually catch up their log book when they make a stop. Officer Clemons testified that the Department of Transportation came out with a new rule in 2004 that would have allowed defendant to drive for 11 hours straight after being down for 47 hours. Officer Clemons thought it was unusual that once defendant had picked up his load he did not drive as far as he could go; he stopped in Lafayette after driving only five and a half hours.

Officer Clemons asked defendant if he was carrying anything illegal. He specifically asked defendant whether defendant was carrying any weapons, marijuana, cocaine, or illegal people. Defendant answered no, but Officer Clemons noted a difference when he was asked about cocaine.[1] At this point, Officer Clemons asked for permission to search the truck, and defendant consented. However, a minute or so later, when Officer Clemons asked again for permission to search the truck, defendant said that he just wanted to get on down the road.

---

[1] Listening to the tape, the court would not have been suspicious based on the defendant's tone of voice or the way he answered these questions. However, Officer Clemons has been trained in looking for suspicious activity of drug couriers and the court credits his testimony that the way in which the defendant answered the questions regarding illegal activity aroused Officer Clemons's suspicion.

3

Officer Clemons thought this was suspicious because he did not have that far to drive before reaching his destination in Georgia.

Officer Clemons called Officer Ernest Ryan and asked him to bring his drug-sniffing dog to the scene. Officer Ryan told Officer Clemons to call him back after he ran a check on the truck and on Dontae Hatchell, the name on the driver's license, with the El Paso Intelligence Center ["EPIC"]. The EPIC check took about five minutes and it came back negative. Officer Clemons called Officer Ryan and told him of the EPIC check, and Officer Ryan brought his dog to the scene, which took about ten minutes.

During this ten minutes, defendant told Officer Clemons that he used to haul explosives, but Dontae Hatchell's license did not have a hazardous materials (Hazmat) endorsement. Also, defendant told Officer Clemons that he had been arrested for robbery, but the background check on Dontae Hatchell did not show such an arrest. Officer Clemons testified that these inconsistencies were suspicious.

Officer Ryan arrived at the scene with the drug-sniffing dog, which was walked around the truck. The dog indicated that he detected the presence of drugs near the driver's side of the cab of the truck. Officer Clemons then told the defendant that they were going to search the truck. Officer Clemons shined a light into the cab of the truck and saw two duffel bags on the top bunk bed in the sleeper compartment of the cab of the truck. He opened the door to the cab and smelled marijuana. Upon opening the two black bags, Officer Clemons saw marijuana. Thereafter, defendant was arrested for trafficking in marijuana.

## II. DISCUSSION

In his Motion to Suppress, defendant argues that "Officer Clemons prolonged the detention of the Defendant longer than was necessary to effectuate the purpose of the stop in violation of the Defendant's constitutional rights." (Doc. 8 ¶ 9.) The Eleventh Circuit applies "four non-exclusive factors" to draw the line "between an investigative stop of limited duration for which reasonable suspicion is enough, and a detention that amounts to an arrest for which probable cause is required." *United States v. Acosta*, 363 F.3d 1141, 1145-46 (11th Cir. 2004). These four factors are "[1] the law enforcement purposes served by the detention, [2] the diligence with which the police pursue the investigation, [3] the scope and intrusiveness of the detention, and [4] the duration of the detention." *Id*. at 1146 (quoting *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000)(quoting *United States v. Hardy*, 855 F.2d 753, 759 (11th Cir. 1988))). The court finds that consideration of these factors establishes that Officer Clemons's detention of plaintiff was an investigative stop of limited duration supported by reasonable suspicion that did not mature into an arrest before there was probable cause.

**A. THE LAW ENFORCEMENT PURPOSES SERVED BY THE DETENTION**

With regard to this first factor, the Eleventh Circuit has held:

"[T]he most important [consideration] 'is whether the police detained [the defendant] to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference.'" *Gil*, 204 F.3d at 1351 (quoting *Hardy*, 855 F.2d at 759). As we explained in our *Hardy* opinion:

> A *Terry*[2] stop is justified to give the police an opportunity to engage in brief and nonintrusive investigation techniques, such as noncustodial questioning of the detained person. A *Terry* stop cannot be used as the basis of a "full search" that would normally be warranted only by the existence of probable cause, consent, or a valid arrest. Nor may the police use an investigative stop to subject a suspect to custodial interrogation that would ordinarily require formal arrest and *Miranda* warnings.
>
> 855 F.2d at 759 (citations and internal quotations omitted). Thus, we must determine whether these officers utilized "brief, minimally intrusive investigation technique[s]" appropriate under *Terry*. *Id*.

*Acosta*, 363 F.3d at 1146 (footnote added).

The court finds that Clemons's conduct – questioning defendant, reviewing the log book, performing a background check on the vehicle and the name on the driver's license, conferring with Officer Ryan, and calling for a drug-sniffing dog – was "designed to lead to a quick and non-intrusive resolution of [his] suspicions" raised by the unusual circumstances. *See id*. Each step taken by Officer Clemons after his initial traffic stop was taken in response to a subsequent suspicious remark by defendant or revelation of a suspicious circumstance, and these steps were designed to confirm or dispel his suspicions of illegal activity. Therefore, the court finds that this factor weighs in favor of the legality of the stop.

**B.   THE DILIGENCE WITH WHICH THE POLICE PURSUE THE INVESTIGATION**

After reviewing the evidence and hearing the testimony, the court finds that Officer Clemons acted with appropriate diligence. The evidence shows that "[e]ach investigatory

---

[2]*Terry v. Ohio*, 392 U.S. 1 (1968).

act logically led to the next act which was done without delay." *Id.*; *see also United States v. Hernandez*, 418 F.3d 1206, 1211 (11th Cir. 2005)("We note that as each answer to the Trooper's investigative questions failed to allay his concerns, the trooper's reasonable suspicion was bolstered, thus justifying his continuing to detain Defendant, his call for the dog, and his request to search the truck.")(footnote omitted).

The court finds that this factor weighs in favor of the legality of the stop.

## C. THE SCOPE AND INTRUSIVENESS OF THE DETENTION

With regard to this factor, the issue is whether the condition of defendant's detention was the equivalent to custodial arrest. *Hardy*, 855 F.2d at 760. Defendant was not "removed to an office or a police station, a factor that the Supreme Court and [the Eleventh Circuit] have found significant in distinguishing *Terry* stops from custodial arrests." *Id*. Indeed, the Eleventh Circuit has held that, under certain circumstances, handcuffing a defendant and placing her in a patrol car is not a sufficient intrusion to transform an investigatory stop into an arrest. *See Gil*, 204 F.3d at 1351. Defendant was not handcuffed or placed in the patrol car, although he was given the option of waiting in the patrol car. In fact, at one point during the stop Officer Clemons told the defendant he was not under arrest. The court finds that the condition of defendant's detention was not the equivalent of a custodial arrest. Moreover, the court finds that the scope of the detention was reasonable based on Officer Clemons's developing suspicions under the circumstances. *See Hernandez*, 418 F.3d at 1210-11.

The court finds that the scope and intrusion of the detention weighs in favor of the legality of the stop.

**D. THE DURATION OF THE DETENTION**

The total duration of the detention was about 35 minutes. "There is no rigid time limitation or bright line rule regarding the permissible duration of a *Terry* stop," and the court "consider[s] whether the police diligently pursued a means of investigation likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Acosta*, 363 F.3d at 1147.[3] Defendant argues that Officer Clemons could have acted with greater dispatch; however, based on the totality of the circumstances, the court finds that Officer Clemons acted without undue delay based on the "additional revelations," which created reasonable suspicion of criminal activity. *See Hernandez*, 418 F.3d at 1211.

The court finds that the duration of the detention weighs in favor of the legality of the stop. Moreover, the court finds, based on consideration of the totality of the circumstances, that defendant's detention "did not mature into a *de facto* arrest before there was probable cause." *See Acosta*, 363 F.3d at 1148. Therefore, defendant's Amended Motion to Suppress, (doc. 8), is due to be denied.

---

[3]The court notes that detentions of more than 35 minutes have been approved by the Eleventh Circuit. *Gil*, 204 F.3d at 1350-51 (detention of 75 minutes); *Hardy*, 855 F.2d at 761 (detention of 50 minutes).

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that defendant's Amended Motion to Suppress, (doc. 8), is due to be denied. An Order denying defendant's Motion to Suppress will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 10th day of March, 2006.

_Sharon Lovelace Blackburn_
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE